**Willis WEBB, Appellant,**

v.

**HARTMAN NEWSPAPERS, INC., Appellee.**

**No. B14–90–00266–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 28, 1990.

Charles L. Babcock, B. Keith Trent, Dallas, for appellant.

A. Reagan Clark, R. Andrew Black, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from the extension of a temporary injunction ordering appellant, Willis Webb, to comply with provisions of a covenant not to compete with his former employer, appellee Hartman Newspapers, Inc. In four points of error, appellant contends the trial court erred in retroactively applying a statute that went into effect after appellant was dismissed as editor and publisher of two Hartman newspapers, and abused its discretion in extending the order because the covenant not to compete is (1) unenforceable based on appellant's lack of consideration and common calling defenses, (2) unreasonable in geographic scope, and (3) unreasonably broad in scope of activity prohibited. Finding the covenant unnecessarily broad to protect appellant's interests, we modify the injunction in terms of geographic scope and prohibited activity and affirm the injunction as modified.

Webb had more than twenty-five years' experience in the newspaper and publishing business when Hartman Newspapers, Inc. hired him in 1985 to begin work as business manager at *The Herald Coaster*, a Hartman newspaper in Rosenberg.

In early 1987, Hartman promoted appellant to editor and publisher of *The Fort Bend Mirror* and *The Mirror*, Hartman's two general interest newspapers serving eastern Fort Bend County. *The Mirror* is a midweek publication distributed free of charge to twenty-two thousand (22,000) readers; *The Fort Bend Mirror* is published on the weekend for three thousand (3,000) paid subscribers. On May 4, 1987, Webb signed the employment agreement which is the basis of the injunction. Included in the agreement was a covenant not to engage in any facet of the publishing business, within a fifty-mile radius of any Hartman newspaper, for three years after termination of his employment. In addition to the *Mirror* publications, Hartman also owns a dozen other newspapers in Texas and Oklahoma.

On June 14, 1989, Hartman fired Webb, who subsequently formed a company called Business Publishing Venture, Inc. and began a new publication, *The Fort Bend Business and Legal Review*, aimed at the Fort Bend legal community and businesses seeking the services of other businesses. After its first issue was published the week of October 18–24, 1989, Hartman filed suit, and the trial court entered a temporary injunction which modified the terms of the covenant not to compete by allowing Webb to retain his stock in Business Publishing Venture, Inc. and by restricting the geographic scope of the covenant to within a fifty-mile radius of Hartman's newspapers in Texas. The temporary injunction expired by its terms on March 1, 1990 when the case was scheduled for trial. However, the trial court extended the terms of the order to May 14, 1990, the second scheduled trial date; subsequently, the trial court has reset the case for August 6, 1990 and ordered that the terms of the injunction remain in full effect until trial.

■ In his first point of error, Webb contends the trial court abused its discretion in retroactively applying Tex.Bus. & Com.Code §§ 15.50 and 15.51 in violation of Article I, § 16 of the Texas Constitution, which prohibits the making of any retroactive law. However, to enjoy the protection of Article I, § 16, one's right must be vested, "something more than a mere expectancy based upon an anticipated continuance of an existing law." *City of Dallas v. Trammell*, 129 Tex. 150, 101 S.W.2d 1009, 1014 (1937). The Supreme Court has defined a vested right as follows:

> A right, in a legal sense, exists, when, in consequence of the existence of given facts, the law declares that one person is entitled to enforce against another a given claim, or to resist the enforcement of a claim urged by another. *Ex parte Abell*, 613 S.W.2d 255, 261 (Tex.1981) (quoting *Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249, 253 (1887)).

Prior to August 28, 1989, the effective date of Sections 15.50 and 15.51, the remedy available to an employee who signed an unreasonable covenant not to compete was to have a court declare it void. *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168

(Tex.1987). In fact, there were only two instances in which covenants not to compete would be upheld: (1) if they were incident to the sale of a business, or (2) if they were post-employment agreements to prevent utilizing special training or knowledge. *Martin v. Credit Protection Ass'n, Inc.*, 31 Tex.Sup.Ct.J. 626, 1988 WL 71554 (July 13, 1988). However, by enacting Sections 15.50 and 15.51, the Legislature in effect overturned *Hill* and its progeny, making a covenant not to compete enforceable to the extent that it:

> (1) is ancillary to an otherwise enforceable agreement but, if the covenant not to compete is executed on a date other than the date on which the underlying agreement is executed, such covenant must be supported by independent valuable consideration; and
>
> (2) contains reasonable limitations as to time, geographical area, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. TEX. BUS. & COM.CODE ANN. § 15.50 (Vernon Supp.1990).

Further, the new statutes altered the remedy for breach of covenants not to compete. Section 15.51(c) provides, in pertinent part:

> [T]he court, at the request of the promisee, shall reform the covenant to the extent necessary to cause the covenant to meet the criteria specified by Subdivision (2) of Section 15.50 …

■ Webb asserts that the new statutes were applied retroactively because his defense, under the *Hill* reasoning, to breaching the covenant vested prior to the effective date of the statutes. We disagree. Under the record before us, Webb did not breach the covenant until after the statutes became effective, thus his defensive rights did not vest prior to the new way of reckoning with such agreements. Although Webb acquired a corporate charter four days prior to the effective date of the statutes, this does not necessarily show a breach of the covenant since the covenant only prohibits ownership of stock in a publishing business. The charter merely re-

cites that Business Publishing Venture is incorporated for any legal purpose, and, in fact, the trial court permitted Webb to retain his stock in the corporation. We hold that Hartman's cause of action arose in October, 1989, when Webb began publishing *The Fort Bend Business and Legal Review.* Therefore, the trial court correctly applied Sections 15.50 and 15.51. Appellant's first point of error is overruled. Likewise, we overrule appellant's second point of error, regarding lack of consideration and common calling defenses. Section 15.50 effectively abolished the common calling defense, and it requires independent consideration only when the covenant not to compete is executed on a date other than the date of the underlying agreement. Such a defense is not applicable here, as Webb did not sign the covenant not to compete on a different date than the underlying employment contract was executed.

■ Because the covenant comports with Section 15.50(1), we now inquire as to whether the covenant is reasonably limited in terms of time, geographical area, and scope of activity. Here, the covenant clearly fails. As written, it restrains fair competition, provides greater protection for Hartman than is necessary, and imposes an undue hardship on Webb. Perhaps in cautious anticipation of our holding, Hartman has requested that this Court modify the temporary injunction to what we consider more reasonable terms. *See Bertotti v. C.E. Shepherd Co., Inc.*, 752 S.W.2d 648 (Tex.App.—Houston [14th Dist.] 1988, no writ).

Regarding the scope of activity which the covenant prohibits, Webb contends that Hartman's interest in seeing *The Fort Bend Mirror* and *The Mirror* succeed as general interest newspapers would not be unduly threatened by Webb disseminating information, although in newspaper format, which is narrowly targeted at a different audience, Fort Bend County's business and legal communities. Hartman, however, contends that because Webb's position with the *Mirror* newspapers acquainted him with their advertising customers, allowing him to engage in any newspa-

per venture competing for advertising dollars in Fort Bend County would give him an unfair competitive advantage that was gained at Hartman's expense. Finding merit in both perspectives, we limit the furtherance of Webb's vocation by restraining him for the time specified in the covenant from soliciting advertising to those concerns which advertised in either *Mirror* newspaper during his tenure as a Hartman employee. Further, we reform the geographic scope of the injunction to the distribution area of the *Mirror* newspapers, which according to the record is a ten-mile radius from the *Mirror* publications' office.

The judgment of the trial court is affirmed as modified.