ACCEPTED
12-15-00141-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
8/13/2015 3:50:20 PM
CATHY LUSK
CLERK

**No. 12-15-00141-CV**

_____

IN THE COURT OF APPEALS
TWELFTH JUDICIAL DISTRICT OF TEXAS
TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

8/13/2015 3:50:20 PM

CATHY S. LUSK
Clerk

_____

MORRISON SUPPLY COMPANY, LLC and PATRIOT SUPPLY
HOLDINGS, INC.

v.

SCOTT HILBURN and MIKE ANTHONY

_____

**REPLY BRIEF OF APPELLANTS**

_____

*On Appeal from the 7th Judicial District Court,*
*Smith County, Texas*
*Trial Court No. 15-0792-A*

_____

Michael E. Starr
 State Bar No. 19078400
COGHLAN CROWSON LLP
1127 Judson Road
Suite 211
Longview, Texas 75606
903.758.5543
mstarr@ccfww.com

Vanessa Griffith
 State Bar No. 00790469
Thomas S. Leatherbury
 State Bar No. 12095275
Stephen S. Gilstrap
 State Bar No. 24078563
VINSON & ELKINS LLP
2001 Ross Avenue
Suite 3700
Dallas, Texas 75201
214.220.7713
214.999.7713 (facsimile)
vgriffith@velaw.com
tleatherbury@velaw.com
sgilstrap@velaw.com

*Attorneys for Appellants Morrison Supply Company, LLC*
*and Patriot Supply Holdings, Inc.*

Oral Argument Requested                    August 13, 2015

# TABLE OF CONTENTS

TABLE OF CONTENTS .............................................................................................. ii

INDEX OF AUTHORITIES........................................................................................iv

RECORD REFERENCES ...........................................................................................vi

RESPONSE TO APPELLEES' STATEMENT OF FACTS.......................................................1

ARGUMENT ...........................................................................................................3

I.  Morrison Properly Challenged All Aspects of the Trial Court's
    Ruling...........................................................................................................3

    A.  Morrison Challenged Every Implied Finding Made by the Trial
        Court, and Thus Presented All Arguments for Appellate
        Review. ...............................................................................................3

    B.  Regardless, the May 13, 2015 Letter Can Be Construed as
        Findings of Fact/Conclusions of Law Under This Court's
        Precedents.............................................................................................5

II. The Evidence Demonstrates That Morrison Proved Each Element of
    Its Claim for a Temporary Injunction...........................................................8

    A.  Morrison Proved the Existence of a Valid Contract. ...........................8

        1.  Anthony and Hilburn Received Consideration in
            Exchange for Entering into the Agreements.............................8

        2.  The Restrictions Sought in the Temporary Injunction
            Are Reasonable. ....................................................................14

    B.  The Evidence Demonstrates That Anthony and Hilburn
        Breached the Agreements...................................................................15

        1.  Anthony and Hilburn Breached Their Non-
            Competition Obligations.........................................................15

        2.  Anthony and Hilburn Breached Their Non-
            Solicitation Obligations. ........................................................16

    C.  None of Anthony and Hilburn's Defenses Provides a Basis for
        Denying Morrison's Application for a Temporary Injunction. ..........17

    D.  The Evidence Demonstrates That Morrison Has a Probable,
        Imminent, and Irreparable Injury for Which There Is No
        Adequate Remedy at Law. .................................................................19

III. This Court Should Order the Trial Court to Reform the Agreements on Remand. ..........................................................................22

    A. This Court Has Jurisdiction to Consider This Issue and Order Reformation...........................................................................22

    B. Morrison Is Entitled to Reformation at this Stage of the Proceedings. .........................................................................25

CONCLUSION AND PRAYER ...................................................................26

CERTIFICATE OF COMPLIANCE ..............................................................27

CERTIFICATE OF SERVICE.......................................................................27

**Cases**

*Alex Sheshunoff Mgmt. Servs., LP. v. Johnson*,
209 S.W.3d 644 (Tex. 2006)...........................................................................10

*Butler v. Arrow Mirror & Glass*, *Inc.*,
51 S.W.3d 787 (Tex. App.—Houston [1st Dist.] 2001, no pet.) .........................15

*CDX Holdings, Inc. v. Heddon*,
No. 12-CV-126, 2012 WL 11019355 (N.D. Tex. Mar. 2, 2012)........................24

*Cobb v. Caye Publ'g Grp., Inc.*,
322 S.W.3d 780 (Tex. App.—Fort Worth 2010, no pet.)...................................23

*Curtis v. Ziff Energy Grp., Ltd.*,
12 S.W.3d 114 (Tex. App.—Houston [14th Dist.] 1999, no pet.).......................15

*DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*,
112 S.W.3d 854 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).............18

*Duddlesten v. Klemm*,
No. 06-08-00106-CV, 2009 WL 635153
(Tex. App.—Texarkana Mar. 13, 2009, no pet.) .................................................7

*Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*,
281 S.W.3d 215 (Tex. App.—Fort Worth 2009, pet. denied) .............................20

*Frey v. DeCordova Bend Estate Owners' Ass'n*,
647 S.W.2d 246 (Tex. 1983)...........................................................................20

*In re Estate of Miller*,
446 S.W.3d 445 (Tex. App.—Tyler 2014, no pet.) ..........................................5, 6

*In re Halliburton Co.*,
80 S.W.3d 566 (Tex. 2002)................................................................. 13, 14, 18

*In re Odyssey Healthcare, Inc.*,
310 S.W.3d 419 (Tex. 2010)...........................................................................13

*Kendrick v. Garcia*,
171 S.W.3d 698 (Tex. App.—Eastland 2005, pet. denied) .................................7

*Marsh USA Inc. v. Cook*,
354 S.W.3d 764 (Tex. 2011)................................................................. 8, 13, 17

*Martin v. Linen Sys. for Hosps., Inc.*,
671 S.W.2d 706 (Tex. App.—Houston [1st Dist.] 1984, no writ)......................20

*McNeilus Companies, Inc. v. Sams*,
   971 S.W.2d 507 (Tex. App.—Dallas 1997, no pet.)............................................22

*Moore v. Jet Stream Investments, Ltd.*,
   315 S.W.3d 195 (Tex. App.—Texarkana 2010, pet. denied) ..............................7

*Poole v. U.S. Money Reserve, Inc.*,
   No. 09-08-137-CV, 2008 WL 4735602
   (Tex. App.—Beaumont 2008, no pet.) ........................................................ 23, 25

*Rugen v. Interactive Bus. Sys., Inc.*,
   864 S.W.2d 548 (Tex. App.—Dallas 1993, no writ)...........................................21

*Sadler Clinic Ass'n, P.A. v. Hart*,
   No. 09-09-00452-CV, 2010 WL 114241
   (Tex. App.—Beaumont Jan. 14, 2010, no pet.) ..................................................22

*Stone v. Griffin Commc'ns & Sec. Sys., Inc.*,
   53 S.W.3d 687 (Tex. App.—Tyler 2001, no pet.) ...............................................15

*TransPerfect Translations, Inc. v. Leslie*,
   594 F. Supp. 2d 742 (S.D. Tex. 2009) ........................................................ 23, 25

*Tranter, Inc. v. Liss*,
   No. 02-13-00167-CV, 2014 WL 1257278
   (Tex. App.—Fort Worth Mar. 27, 2014, no pet.) ........................................ 19, 23

*Villa Nova Resort, Inc. v. State*,
   711 S.W.2d 120 (Tex. App.—Corpus Christi 1986, no writ)................................6

*Webb v. Hartman Newspapers, Inc.*,
   793 S.W.2d 302 (Tex. App.—Houston [14th Dist.] 1990, no writ)....................23

*Wright v. Sport Supply Grp., Inc.*,
   137 S.W.3d 289 (Tex. App.—Beaumont 2004, no pet.) .............................. 23, 25

*Wright v. Sydow*,
   173 S.W.3d 534 (Tex. App.—Houston [14th Dist.] 2004, pet. denied)..............18

**Statutes**

TEX. BUS. & COMM. CODE § 15.51(c)....................................................................23

## RECORD REFERENCES

Citations to the record and appendix are formatted as they were in the Brief

of Appellants, with the following addition:

(1)    Supplemental Reporter's Record for the        Supp. RR *Page: Line Nos.*
       July 10, 2015 Hearing on Motion to Seal

TO THE HONORABLE TWELFTH COURT OF APPEALS:

Morrison Supply Company, LLC and Patriot Supply Holdings, Inc. (collectively, "Morrison") respectfully submit this Appellants' Reply Brief:

**RESPONSE TO APPELLEES' STATEMENT OF FACTS**

A central issue in this appeal is whether Morrison has shown irreparable harm resulting from Anthony and Hilburn's actions. The trial court found that Morrison had an adequate remedy at law, *see* App. 1, and based that finding—at least implicitly—on Anthony and Hilburn's testimony that "they are currently unemployed" and would not begin working for National Wholesale Supply, Inc. ("National") until "their legal responsibilities [were] determined," App. 2 at 2.[1] That testimony, however, was misleading, as shown (1) by the Van Kelley Affidavit, *see* App. 8, and, more importantly, (2) by statements at a July 10, 2015 hearing where Anthony and Hilburn's counsel admitted that they were working for National, a violation of the Nonqualified Stock Option Award Agreements ("Agreements"). *See* Supp. RR 29:9:12 ("From what I understand, I think [Anthony and Hilburn] might be working in the warehouse at National now. I think we're talking two weeks ago, they started working.").

---

[1] Anthony and Hilburn's testimony on this point was contradicted by other evidence in the record, which suggested that they were employed at National before the trial court entered a TRO. *See* Appellants' Br. at 9-10 & n.6; *see also* 5RR, Exs. 1-2.

1

At the July 10, 2015 hearing, the trial court confirmed that Anthony and Hilburn's prior testimony about their employment had been misleading, stating:

- The fact that Anthony and Hilburn now are working at National "certainly was inconsistent with the factual testimony [the trial court] thought that [it] heard." *Id.* at 29:1-4.

- "[The record] will be fairly read to suggest that [Anthony and Hilburn] said that . . . we filed this suit to get our rights determined and liability determined before we ever went to work or would go to work for the new prospective employer." *Id.* at 29:22-30:1.

- "[I]f [Anthony and Hilburn] stuck with what they testified about, they'd still have been sitting at home on July 10th, not working for this new employer; waiting for the litigation to work itself out." *Id.* at 30:9-12.

While the trial court declined to address this new evidence at the July 10, 2015 hearing, it noted that such evidence "may cause [it] to give an expedited trial," *id.* at 31:9, and also "suggest[ed]" that Morrison's counsel "point [this fact] out to the appellate brethren and see what they do," *id.* at 31:7-9.

Given that Anthony and Hilburn have admitted that they now are working for National, and that the trial court was misled by Anthony and Hilburn's

2

testimony at the temporary injunction hearing, this Court can and should take notice of the fact that Anthony and Hilburn currently are employed at National.

**ARGUMENT**

## I. Morrison Properly Challenged All Aspects of the Trial Court's Ruling.

Anthony and Hilburn incorrectly argue that Morrison "failed to properly challenge" the trial court's ruling. Resp. Br. at 18. Specifically, Anthony and Hilburn claim that Morrison treated the trial court's May 13, 2015 letter (to which the Order Denying Morrison's Temporary Injunction Application was attached) as findings of fact/conclusions of law and, in so doing, failed to challenge the trial court's implied findings on each element of its temporary injunction claim. *Id.* at 18-24. This argument is wrong in every respect because: (1) Morrison did not treat the trial court's May 13, 2015 letter as findings of fact/conclusions of law in its brief; and (2) Morrison challenged each and every implied finding that the trial court possibly could have made in denying its Temporary Injunction Application.

### A. Morrison Challenged Every Implied Finding Made by the Trial Court, and Thus Presented All Arguments for Appellate Review.

First, there is no support for Anthony and Hilburn's argument that Morrison treated the trial court's May 13, 2015 letter as findings of fact/conclusions of law. Morrison recognized, in its brief, the possibility that the trial court's letter might be of limited significance, noting that "[w]hile the trial court's [letter] is not a formal order . . . and is not necessarily entitled to the same weight [as] a formal order,

3

Morrison cites [it] because it provides further explanation . . . ." Appellants' Br. at 11 n.7. Anthony and Hilburn ignore that statement. Moreover, if Morrison had treated the trial court's May 13, 2015 letter as findings of fact/conclusions of law, then it would not have made many of the arguments in its brief because—to the extent that letter could function as findings of fact/conclusions of law—the trial court found that Morrison had proven several elements of its claim. For example, the trial court stated in its letter: "The Court finds Paragraphs 7 [confidentiality provision], 8 [non-competition provision], and 9 [non-solicitation provision] to be ancillary to an otherwise enforceable agreement . . . ." App. 2 at 1. Had Morrison treated this letter as the trial court's findings of fact/conclusions of law, it would not have spent an entire section of its brief arguing that the evidence showed that the non-competition and non-solicitation provisions of the Agreements were ancillary to or part of an otherwise enforceable agreement. *See* Appellants' Br. at 17-20. Similarly, the trial court noted in its letter that the Agreements "do[] not appear to be illusory," App. 2 at 1, yet Morrison rebutted any purported evidence to the contrary, *see* Appellants' Br. at 27-29 (arguing that the Agreements were not illusory because the evidence showed that Anthony and Hilburn received valuable stock options and confidential information after signing the Agreements).

Second, Morrison challenged each and every implied finding made by the trial court, and a quick review of Morrison's brief confirms that fact. *See*

4

Appellants' Br. at xii (addressing each element of a temporary injunction claim in the "Issues Presented"); *id.* at 16-26 (arguing that the evidence shows that Morrison has a probable right to the relief requested because the Agreements are enforceable, the restrictions sought by Morrison are reasonable, and Anthony and Hilburn breached the Agreements); *id.* at 26-33 (addressing each of Anthony and Hilburn's affirmative defenses); *id.* at 33-38 (arguing that the evidence shows imminent and irreparable injury to Morrison, that Morrison's sought-after relief is necessary, and that the trial court abused its discretion in concluding otherwise). Once this Court reviews the arguments made in Morrison's brief, it will see that Anthony and Hilburn's argument on this point is meritless.

**B.    Regardless, the May 13, 2015 Letter Can Be Construed as Findings of Fact/Conclusions of Law Under This Court's Precedents.**

While Morrison did not, out of an abundance of caution, rely on (or treat) the trial court's May 13, 2015 letter as findings of fact/conclusions of law, under this Court's precedents, that letter can be given such weight.  Anthony and Hilburn recognize this fact and cite this Court's decision in *In re Estate of Miller*, 446 S.W.3d 445 (Tex. App.—Tyler 2014, no pet.), for the proposition that "[i]t is possible for findings and conclusions to be contained in a trial court's letter to counsel if the letter is filed of record." *Id.* at 450.

A comparison of the letters in *In re Estate of Miller* and this case confirms that the trial court's May 13, 2015 letter can be construed as findings of fact and conclusions of law because:

- Both letters were filed as part of the Clerk's Record;

- Both letters were filed contemporaneously with the relevant order/judgment being appealed;

- Both letters provided an "explanation of the basis for [the trial court's] ruling," and thus "satisfie[d] the purpose of Rule 296";[2]

- Both letters indicated that the trial court here and in *In re Estate of Miller* meant for the letters to be construed as findings of fact/conclusions of law because they discussed the evidence presented and used phrases such as the "Court finds"; and

- The trial court here and in *In re Estate of Miller* only filed letters to explain the rulings; they did not file separate findings of fact/conclusions of law.

*Compare In re Estate of Miller*, 446 S.W.3d at 450-52, *with* App. 2.

Other courts of appeals have reached the same conclusion as this Court did in *In re Estate of Miller* regarding similar trial court letters, and have treated such

---

[2] The Texas Rules of Civil Procedure do not require that findings of fact/conclusions of law be in any particular form so long as they are in writing and are "filed with the Clerk and shall be part of the record." *See Villa Nova Resort, Inc. v. State*, 711 S.W.2d 120, 124 (Tex. App.—Corpus Christi 1986, no writ).

6

letters as findings of fact/conclusions of law. *See, e.g.*, *Duddlesten v. Klemm*, No. 06-08-00106-CV, 2009 WL 635153, at \*2 (Tex. App.—Texarkana Mar. 13, 2009, no pet.) ("Here, the trial court specifically stated the letter set out the findings of fact and conclusions of law, the letter was filed with the clerk, and the court did not enter other findings or conclusions. While we do not hold that every letter written by a trial court to the attorneys will qualify, the facts of this case authorize us to consider the trial court's letter as its findings of fact and conclusions of law."); *Kendrick v. Garcia*, 171 S.W.3d 698, 702 (Tex. App.—Eastland 2005, pet. denied) (construing a prejudgment letter as findings of fact/conclusions of law where the trial court "did not enter formal findings of fact and conclusions of law which appellants are attempting to alter with the trial court's letter ruling").[3]

To the extent this Court construes the trial court's May 13, 2015 letter as findings of fact/conclusions of law, this Court need only consider (1) whether the trial court abused its discretion in determining that Morrison failed to show an imminent and irreparable injury, and (2) whether the trial court should have reformed the Agreements at the temporary injunction stage. *See* App. 1 (finding an adequate remedy at law); App. 2 at 2 (discussing Anthony and Hilburn's testimony related to imminent/irreparable harm). And considering that the trial court's

---

[3] *Moore v. Jet Stream Investments, Ltd.*, 315 S.W.3d 195 (Tex. App.—Texarkana 2010, pet. denied), is inapposite because, unlike that case, the trial court's letter here did not conflict with its order. *See id.* at 209 ("This is especially true in light of the fact that the subsequent judgment conflicts with the trial court's letter on the issue of attorney's fees.").

finding on irreparable/imminent injury was based on Anthony and Hilburn's misleading and now-contradicted testimony, *see supra* at 1-3, that issue should be resolved in Morrison's favor. The reformation issue likewise should be resolved in Morrison's favor because the statute itself and several cases suggest that reformation is appropriate at the temporary injunction stage. *See infra* at 22-26.

## II.  The Evidence Demonstrates That Morrison Proved Each Element of Its Claim for a Temporary Injunction.

### A.  Morrison Proved the Existence of a Valid Contract.

#### 1.  Anthony and Hilburn Received Consideration in Exchange for Entering into the Agreements.

The evidence demonstrates that Anthony and Hilburn received two types of consideration in exchange for signing the Agreements, each of which is independently sufficient to establish an enforceable and valid contract: (1) confidential information after signing the Agreements; and (2) valuable stock options. *See* Appellants' Br. at 17-20. Anthony and Hilburn do not dispute that these types of consideration can make a contract enforceable. *See* Resp. Br. at 27-28 (admitting that Morrison only needed to show that Anthony and Hilburn received confidential information after signing the Agreements); *id.* at 31 ("A stock option can support an agreement not to compete." (citing *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 774-76 (Tex. 2011))). Rather, Anthony and Hilburn argue that Morrison did not provide them with confidential information after they

8

executed the Agreements and that any stock option award was illusory. Both arguments fail.

> ### a. Anthony and Hilburn Received Confidential Information After Signing the Agreements.

The temporary injunction record was replete with specific examples of confidential information that Anthony and Hilburn received after signing the Agreements. Morrison introduced six such exhibits, several of which are examples of confidential documents that Anthony and Hilburn received on a weekly—or even daily—basis. The trial court temporarily sealed those exhibits when it issued its temporary injunction order, and now has permanently sealed them. *See* App. 3; Supp. RR 16:14-19. Those exhibits are:

- One example of an email setting forth the price Morrison paid for several key products where the email was password protected. *See* 4RR 10:3-14:23; *see also* 5RR, Ex. 22.

- A detailed report showing Morrison's pricing strategy, including objectives for each region, ways to improve margins, and performance of each region; this document was labeled confidential and proprietary. *See* 3RR 87:24-92:7; *see also* 5RR, Ex. 12.

- One example of a "weekly dashboard" for each branch under Anthony and Hilburn's supervision, which contains all of the branch's financial transactions for the week as well as an analysis of the transactions, such as the "customer trends" section, which evaluates whether the branch is making money from a customer, whether the amount of money earned from that customer is increasing or decreasing, how the goods are being priced, and similar information that is key to understanding whether the branch is profitable. *See* 3RR 77:1-81:24; *see also* 5RR, Ex. 9.

9

- One example of "Customer Evaluation" report, which sets forth detailed information regarding a particular customer including the customer's purchases, what the company's margin is on those purchases, and whether there are opportunities for additional sales or increased margins with this customer. *See* 3RR 82:2-85:21; *see also* 5RR, Ex. 10.

- One example of a "Daily Audit Summary," which contains a list of every transaction in a particular branch and the details of those transactions including price, volume, and customer name. *See* 3RR 85:24-87:20; *see also* 5RR, Ex. 11.

- Information regarding pricing from Western Pottery, which is below market. *See* 4RR 15:2-16:17; *see also* 5RR, Ex. 23.

Ignoring that the trial court ordered these confidential documents to be sealed, Anthony and Hilburn assert that these documents are not confidential because: (1) Morrison is in a buying group, and pricing information is known to and is the same for everyone in the buying group; (2) some of this information is "stale" because certain pricing information "would change daily"; and (3) other Morrison employees—who did not sign Agreements with non-competition or confidentiality covenants—also were able to view some of this information. *See* Resp. Br. at 26-33. These responses do not call into question the confidential nature of these documents or the fact that Anthony and Hilburn received them after signing the Agreements, thereby making the Agreements enforceable under Texas law. *See Alex Sheshunoff Mgmt. Servs., LP. v. Johnson*, 209 S.W.3d 644, 649 (Tex. 2006) (finding an employer's non-competition agreement was enforceable

10

because the employer had provided confidential information to the employee as promised in the employment agreement).

First, even though Morrison was in a buying group, the evidence at the temporary injunction hearing showed that Morrison often negotiated prices individually, which led to certain pricing information that was not known to others in the buying group. *See* 4RR 9:6-23 ("Q. Does Morrison always and only pay the price that's been negotiated by the buying group? A. No, ma'am. Q. And do you share those deals, the terms of those deals with other companies in the industry? A. No, ma'am. Q. Do you consider the terms of those deals to be confidential? A. Yes, ma'am. Q. And why is that? A. Because it is an advantage for us as a company to have those programs.").

Second, while some pricing information might change regularly, the evidence at the temporary injunction hearing demonstrated that the confidential information received by Anthony and Hilburn (and sealed by the trial court) was not stale and continued to be used by Morrison. *See* 3RR 96:24-97:4 (stating that certain confidential pricing information received by the Former Managers is used to analyze Morrison's overall margins and that it would be included in a data set for a 12-month "look back"); 4RR 102:7-103:1 (noting that pricing strategy, which Morrison continues to use, is not "stale" confidential information).

11

Third, Anthony and Hilburn's argument that other Morrison employees also received some of this confidential information does not change the nature of that information. Anthony and Hilburn cite no case where this factor was even considered to be relevant in determining whether a non-competition agreement was enforceable, and Morrison is not aware of any such case. Because this information was kept within Morrison and was protected (by passwords or other security measures, *see* 4RR 10:3-14:23), it was (and remains) confidential.

### b. Anthony and Hilburn Received Valuable Stock Options.

There is no dispute that Anthony and Hilburn received stock options in exchange for signing the Agreements and that those options had value. *See* 3RR 109:10-14 ("The individuals that participate [in the stock option award program] have the opportunity, again, to have a small degree of ownership, as far as in the business, as far as an option holder with the ability" to obtain proceeds.). Nevertheless, Anthony and Hilburn complain that these options were not valid consideration because: (1) the Agreements only provided stock "options," not stock itself; (2) Anthony and Hilburn were never provided with a copy of the Patriot "Stock Award Agreement"; and (3) Anthony and Hilburn, as at-will employees, could lose their stock options if they were terminated for cause. *See* Resp. Br. at 31-32. Again, each of these arguments fails.

12

First, the Texas Supreme Court has spoken clearly on the issue about stock "options" versus stock ownership. In *Marsh*, the Texas Supreme Court held that it was the grant or award of stock options—not the exercise of those options—that made a non-competition agreement enforceable. *See* 354 S.W.3d at 777 ("***By awarding Cook stock options***, Marsh linked the interests of a key employee with the company's long-term business interests.") (emphasis added). Notably, Anthony and Hilburn fail to address *Marsh*.

Second, Anthony and Hilburn fail to argue how allegedly not receiving the Patriot "Stock Award Agreement," deprived their stock options of value. And while Anthony and Hilburn claim that the "Stock Award Agreement" revealed that Patriot had the unilateral and unfettered right to destroy their stock options at any time, Resp. Br. at 32, that argument simply is not true. Under the "Stock Award Agreement," Patriot could not take any action that "adversely affect[ed] in any material respect the rights granted to any Participant under any outstanding Awards." 5RR, Ex. 13 at 9. Because Patriot could only take prospective actions with regard to the stock option awards, the stock options Anthony and Hilburn received had value. *See, e.g.*, *In re Halliburton Co.*, 80 S.W.3d 566, 569-70 (Tex. 2002) (holding that a contract is enforceable even when one party has the right to amend or terminate it unilaterally, so long as the right is restricted in some manner); *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (same).

13

Third, Anthony and Hilburn's argument that the stock options were illusory because they might forfeit options if they were terminated for cause fails because this possible forfeiture was "restricted in some manner," and thus the consideration was not illusory. *E.g.*, *In re Halliburton Co.*, 80 S.W.3d at 569-70.

In sum, the evidence presented at the temporary injunction hearing confirms that Anthony and Hilburn received valuable consideration in exchange for signing the Agreements,[4] thereby making them enforceable. To the extent the trial court found otherwise, it abused its discretion.

2. The Restrictions Sought in the Temporary Injunction Are Reasonable.

Anthony and Hilburn do not argue that the geographic restrictions—or any other type of restrictions—sought in Morrison's Application for a Temporary Injunction are overbroad. *See* Resp. Br. at 33-35. Rather, they only assert that a nationwide restriction is overbroad because "Anthony and Hilburn's work for Morrison only involved the branches in East Texas and Shreveport. Resp. Br. at 34. But, as Morrison has confirmed, it is only seeking to enforce the non-competition provision in the limited geographic area where Anthony and Hilburn worked. Appellants' Br. at 21 ("[W]e are seeking a very specific injunction . . . . It would be limited to the specific region in which Mr. Anthony and Mr. Hilburn

---

[4] Because Morrison gave Anthony and Hilburn valuable consideration in exchange for signing the Agreements, Anthony and Hilburn's argument that "the evidence is conflicting as to whether Morrison [performed under the Agreements]" fails. *See* Resp. Br. at 35.

14

work." (quoting 4RR 73:15-24)). Because this type of limited geographic restriction repeatedly has been upheld by this Court and other Texas courts of appeals,[5] Anthony and Hilburn's argument is both irrelevant and meritless.

## B. The Evidence Demonstrates That Anthony and Hilburn Breached the Agreements.

### 1. Anthony and Hilburn Breached Their Non-Competition Obligations.

Anthony and Hilburn's argument that they did not breach the non-competition provision in the Agreements is based on the false premises that they are not currently working for National and that no evidence at the temporary injunction hearing showed that they worked for National before the TRO was entered.[6] *See supra* at 1-3. While Anthony and Hilburn continue to cite the temporary injunction hearing transcript that misled the trial court, *see id.*, there cannot now be any dispute that Anthony and Hilburn are working for National in violation of the Agreements. Anthony and Hilburn's counsel admitted that fact to the trial court, and this Court should not ignore it. *See* Supp. RR 29:9:12 ("From what I understand, I think [Anthony and Hilburn] might be working in the

---

[5] *See, e.g.*, *Stone v. Griffin Commc'ns & Sec. Sys., Inc.*, 53 S.W.3d 687, 694 (Tex. App.—Tyler 2001, no pet.) (enforcing covenant in specific geographic area where former employee had worked); *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 794 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (similar); *Curtis v. Ziff Energy Grp., Ltd.*, 12 S.W.3d 114, 119 (Tex. App.— Houston [14th Dist.] 1999, no pet.) (similar).

[6] Further, as noted in Morrison's brief, any testimony that Anthony and Hilburn were not working for National at the time of the temporary injunction hearing is irrelevant because they were subject to TRO at that time. *See* Appellants' Br. at 9-10.

15

warehouse at National now. I think we're talking two weeks ago, they started working."). Further, other evidence at the temporary injunction hearing supported Morrison's argument that Anthony and Hilburn worked at National before the TRO was issued. *See* 5RR, Exs. 1-2.

> 2. Anthony and Hilburn Breached Their Non-Solicitation Obligations.

Anthony and Hilburn's only response to the overwhelming evidence, outlined in Morrison's brief, that they violated the non-solicitation provision in the Agreements is to argue that "[w]itnesses testified that Hilburn and Anthony did not recruit any employees to leave Morrison and go to work for National." Resp. Br. at 36. Beyond the fact that "solicitation" covers a broader array of activities than simply "recruiting," *see, e.g.*, 5RR, Ex. 3 at 5 (defining "solicitation"), the testimony that Anthony and Hilburn cite for this proposition consists of Hilburn's self-serving statements, as well as a statement from Ronnie Rice, in which he said only that Anthony and Hilburn did not recruit *him*—as opposed to any of the other Morrison employees—to work for National. *See* 3RR 23:2-5, 53:4-13, 63:1-3; 4RR 43:3-8.

This testimony does not change the fact that Anthony and Hilburn admitted to breaching the non-solicitation provision in the Agreements by speaking with numerous Morrison employees about going to work for National, *see* 2RR 28:1-7; 3RR 17:21-18:6, and by meeting with Charlie Reynolds (the President of National)

16

and Morrison employees months before the April 13, 2015 resignations, *see* 2RR 26:5-14, 28:10-23; 3RR 21:8-17. This testimony also does not change the fact that Hilburn admitted to helping his brother resign from Morrison by requesting that Anthony send him a resignation form for his brother to use, *see* 3RR 23:20-25:10, and that Hilburn submitted at least 28 signed resignation forms on behalf of other employees, *see* 5RR, Ex. 6.

Given that Anthony and Hilburn indisputably now work at National in competition with Morrison and the overwhelming evidence showing that Anthony and Hilburn breached the non-solicitation provision in their Agreements, the trial court abused its discretion to the extent it concluded that the evidence failed to show that Anthony and Hilburn breached the Agreements.

### C.   None of Anthony and Hilburn's Defenses Provides a Basis for Denying Morrison's Application for a Temporary Injunction.

As outlined in Morrison's brief and above, none of Anthony and Hilburn's defenses justifies denying Morrison's Temporary Injunction Application. There is no indication that the trial court denied the temporary injunction on any of these bases but, to the extent the trial court did so, it abused its discretion.

| Alleged Defense | Why Alleged Defense Fails |
| --- | --- |
| "Hornsby represented 'he was giving us stock in the company' when in fact the agreement is only an illusory stock option." Resp. Br. at 37 (internal citation omitted). | In *Marsh*, the Texas Supreme Court held that it was the grant or award of stock options—not the exercise of those options—that made the non-competition agreement enforceable. *See* 354 S.W.3d at 777; *see also* Appellants' Br. at 27-29. |

17

| Alleged Defense | Why Alleged Defense Fails |
|---|---|
| "Hornsby said the non-compete clause 'was not worth the piece of paper it was written on,' contrary to the position Morrison is taking . . . ." Resp. Br. at 37 (internal citation omitted). | Anthony and Hilburn could not have justifiably relied on any such assertion because it was contradicted by the Agreements' plain language. *See DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see also* Appellants' Br. at 30-31.<br><br>Hornsby never told the Former Managers that the Agreements were invalid, unenforceable, or "not worth the paper they were written on." 3RR 115:14-116:1. |
| "Hornsby said the non-compete 'was only good for 12 months from the day we signed it,' contrary to the position Morrison is taking . . . ." Resp. Br. at 37 (internal citation omitted). | Anthony and Hilburn could not have justifiably relied on any such assertion because it was contradicted by the Agreements' plain language. *See DRC Parts & Accessories, L.L.C.*, 112 S.W.3d at 858; *see also* Appellants' Br. at 30-31.<br><br>Hornsby told Anthony and Hilburn that the non-competition provisions ran for one year from the date of their departure from Morrison—not from the date it was signed. *See* 3RR 112:17-113:8. |
| "Morrison executives never gave [Anthony and Hilburn] the actual stock plan . . . ." Resp. Br. at 37. | Anthony and Hilburn fail to assert how this alleged oversight deprived their stock options of any value. Further, under the "Stock Award Agreement," Patriot could only take prospective actions with regard to stock option awards; thus the stock options Anthony and Hilburn received had value. *See In re Halliburton Co.*, 80 S.W.3d at 569-70; *see also* Appellants' Br. at 27-28. |
| "Anthony and Hilburn were pressured into signing the [A]greements." Resp. Br. at 37. | There was no evidence of duress presented at the temporary injunction hearing, *see* 4RR 61:23-25 (noting lack of evidence), and, in any event, Anthony and Hilburn cannot meet the standard required to show duress, *see Wright v. Sydow*, 173 S.W.3d 534, 544 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).<br><br>Any argument that Anthony and Hilburn were pressured or rushed into signing the Agreements is contradicted by the record. *See* Appellants' Br. at 31-32. |

18

**D.** **The Evidence Demonstrates That Morrison Has a Probable, Imminent, and Irreparable Injury for Which There Is No Adequate Remedy at Law.**

Anthony and Hilburn currently are working for National in violation of the non-competition provision in the Agreements they signed. *See supra* at 1-3. This continued breach of the Agreements "creates a rebuttable presumption that [Morrison] is suffering an irreparable injury." *Tranter, Inc. v. Liss*, No. 02-13-00167-CV, 2014 WL 1257278, at *7 (Tex. App.—Fort Worth Mar. 27, 2014, no pet.). Anthony and Hilburn put forward no argument or evidence to rebut that presumption, choosing instead to argue only that "Anthony and Hilburn *were* not working for National" at the time of the temporary injunction hearing. *See* Resp. Br. at 39. This argument is irrelevant, *see supra* at 15 n.6, and this Court should not condone Anthony and Hilburn's attempt to hide behind their self-serving and misleading statements.

Anthony and Hilburn also have no response for Morrison's argument—based on uncontradicted testimony—that Anthony and Hilburn's actions resulted in (1) Morrison losing more than 50% of its workforce in East Texas; (2) Morrison's name, reputation, and other elements of its goodwill being harmed; (3) Morrison's ability to operate being hampered; and (4) harm to Morrison's relationships with its customers and vendors. *See, e.g.*, 3RR 126:15-127:21 (Hornsby testifying that Anthony and Hilburn's departures harmed Morrison

because, *inter alia*, they helped develop strategies and customer relationships and because their departures harmed Morrison's reputation among the customer base and suppliers). These types of damages are not easily quantifiable, and Texas courts of appeals have held that such damages constitute irreparable injuries. *See, e.g.*, *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 228 (Tex. App.—Fort Worth 2009, pet. denied) ("Disruption to a business can be irreparable harm. Moreover, assigning a dollar amount to such intangibles as a company's loss of clientele, goodwill, marketing techniques, and office stability, among others, is not easy." (internal citations omitted)); *Martin v. Linen Sys. for Hosps., Inc.*, 671 S.W.2d 706, 710 (Tex. App.—Houston [1st Dist.] 1984, no writ).

Finally, Anthony and Hilburn argue that "fear and apprehension that [they] might in the future violate the terms of the non-compete" is insufficient to obtain a temporary injunction. *See* Resp. Br. at 39. Anthony and Hilburn are incorrect and the case they rely on—*Frey v. DeCordova Bend Estate Owners' Ass'n*, 647 S.W.2d 246, 248 (Tex. 1983)—is distinguishable because that case involved a situation where no injury had occurred. Here, Morrison already has been injured because Anthony and Hilburn (1) violated the non-competition provision in the Agreements by working for National before the TRO was issued and by resuming their employment there, *see supra* at 1-3, 15; 5RR, Exs. 1-2, and (2) violated the non-solicitation provision in the Agreements, causing Morrison to lose half of its

20

East Texas workforce, *see supra* at 16-17. Moreover, Anthony and Hilburn (who received confidential information from Morrison) currently are working for National in the same geographic region, thereby causing the constant and imminent threat to Morrison that its confidential information will be disclosed. *See* 3RR 127:5-12 (Hornsby testifying that the Former Managers "have an enormous amount of information related to [Morrison's] strategy" and that the potential harm caused by disclosure could not "be easily or clearly remedied with payment of money"). This type of threat is sufficient to demonstrate imminent harm. *See, e.g.*, *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 552 (Tex. App.—Dallas 1993, no writ) ("Rugen is in possession of IBS's confidential information and is in a position to use it. Under these circumstances, it is probable that Rugen will use the information for her benefit and to the detriment of IBS. At times, an injunction is the only effective relief an employer has when a former employee possesses confidential information.").

The evidence shows that the trial court's finding that Morrison had an adequate remedy of law was based on the misleading testimony of Anthony and Hilburn that they were not working for National and would not work for National until this litigation was resolved. There now is no dispute that Anthony and Hilburn are working for National, that their solicitation of other Morrison employees caused Morrison injury, and that Morrison faces the constant threat that

21

its confidential information will be used to its detriment. To the extent the trial court concluded that Morrison had not presented evidence of irreparable and imminent injury, it abused its discretion.[7]

## III. This Court Should Order the Trial Court to Reform the Agreements on Remand.

### A. This Court Has Jurisdiction to Consider This Issue and Order Reformation.

Anthony and Hilburn—again, hoping to avoid the merits of Morrison's arguments—attempt to convince this Court that it lacks jurisdiction to consider whether reformation is appropriate at the temporary injunction stage. Anthony and Hilburn's arguments are based on a handful of cases[8] that are at odds with more persuasive decisions from both state and federal courts in Texas. These more persuasive cases stand for the proposition that reformation can be ordered at the temporary injunction stage.

---

[7] Nothing suggests that the trial court found that the equities favor Anthony and Hilburn and, to the extent it did, it abused its discretion. Given the evidence outlined in Morrison's brief and reply brief, the equities favor Morrison and support the issuance of a temporary injunction here. Anthony and Hilburn's arguments to the contrary are based on assertions that are contradicted by the record. For example, Anthony and Hilburn argue that there never received any confidential information, *see* Resp. Br. at 41, but that is not true, *see supra* at 20-21. Similarly, Anthony and Hilburn focus on the geographic scope of the Agreements as written, *see* Resp. Br. at 42, but ignore that Morrison is only seeking to enforce the Agreements in the limited geographic area where Anthony and Hilburn worked, *see supra* at 14-15. In sum, Anthony and Hilburn's "equitable" arguments should be rejected. To the extent the trial court denied the temporary injunction on this basis, it abused its discretion.

[8] *See, e.g.*, *McNeilus Companies, Inc. v. Sams*, 971 S.W.2d 507 (Tex. App.—Dallas 1997, no pet.); *Sadler Clinic Ass'n, P.A. v. Hart*, No. 09-09-00452-CV, 2010 WL 114241, at *3 (Tex. App.—Beaumont Jan. 14, 2010, no pet.).

As outlined in Morrison's brief, several Texas courts have held that "reformation is not only a final remedy" and should—in certain circumstances—be ordered at an interlocutory stage.[9] *Liss*, 2014 WL 1257278, at \*10; *see also, e.g.*, *Poole v. U.S. Money Reserve, Inc.*, No. 09-08-137-CV, 2008 WL 4735602, at \*9 (Tex. App.—Beaumont 2008, no pet.) (holding that a temporary injunction was overbroad and remanding to the trial court to determine reasonable reformation); *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 294 (Tex. App.—Beaumont 2004, no pet.) (suggesting that reformation at the temporary injunction stage was appropriate, but remanding for additional fact-finding). And federal courts in Texas have followed suit in reliance on these state court cases. *See TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 756 (S.D. Tex. 2009) (reforming agreement at temporary injunction stage and noting that (1) under section 15.51, "[t]he court need not wait for the parties to request [reformation]," and (2) "[s]ome Texas appeals courts have suggested . . . that reformation is appropriate at the temporary injunction stage); *CDX Holdings, Inc. v. Heddon*, No. 12-CV-126, 2012

---

[9] Anthony and Hilburn assert that Morrison only cited two cases for this proposition in its brief. Resp. Br. at 47-48. In fact, Morrison cited half a dozen cases, which stand for the proposition that reformation is not only a final remedy. *See* Appellants' Br. at 42-43 & n.15. And, in addition to those cases, some Texas courts have reformed agreements at the temporary injunction stage without commenting on the propriety of such reformation. *See, e.g.*, *Cobb v. Caye Publ'g Grp., Inc.*, 322 S.W.3d 780, 782 (Tex. App.—Fort Worth 2010, no pet.); *Webb v. Hartman Newspapers, Inc.*, 793 S.W.2d 302, 305 (Tex. App.—Houston [14th Dist.] 1990, no writ).

WL 11019355, at *11 (N.D. Tex. Mar. 2, 2012) ("Some Texas court[s] have suggested that reformation may be appropriate at the temporary injunction stage.").

An approach which permits courts to reform overbroad non-competition agreements at the temporary injunction stage also is supported by the text of the statute, which provides: "If the covenant is found to be ancillary to or part of an otherwise enforceable agreement but contains [overbroad] limitations . . . the court *shall* reform the covenant to the extent necessary to cause the limitations . . . to be reasonable . . . ." TEX. BUS. & COMM. CODE § 15.51(c) (emphasis added). Here, because the trial court already has noted that the Agreements are enforceable but contain overbroad geographic restrictions, *see* App. 2 at 1, the statute requires the court to reform the Agreements. The statute includes no language suggesting that reformation should (or must) wait until trial or final judgment, and this Court should not read any such requirements into the statute's plain language. Put simply, since the trial court has found that the two conditions precedent exist (enforceability and overbreadth), the statute requires reformation at this stage of the proceedings.

For these reasons, this Court has jurisdiction to consider whether the trial court abused its discretion by not reforming the Agreements at the temporary injunction stage.

24

**B.    Morrison Is Entitled to Reformation at this Stage of the Proceedings.**

In addition to the statutory argument outlined above, *see supra* at 23, Morrison is entitled to reformation at this stage because—without that remedy—Morrison will be unable to recover damages against Anthony and Hilburn for their ongoing breaches of the non-competition covenant in the Agreements between now and when the Agreements ultimately are reformed.  That is especially true because where, as here, the overbroad geographic provision has been identified and is not disputed, there is no need for further discovery or litigation before reformation.  *See TransPerfect Translations, Inc.*, 594 F. Supp. 2d at 756 (stating, at the temporary injunction phase, that "the Court will . . . reform the contract as necessary based on the current evidence, noting that any reformation or permanent injunction to be entered may differ from this temporary reformation . . . .").

This Court should order the trial court to reform the Agreements at this stage of the proceedings so Morrison is not prevented from recovering certain damages going forward.[10]   The trial court denied Morrison the relief of a temporary injunction ***and*** the possibility of recovering certain of its damages going forward

---

[10] Anthony and Hilburn take issue with the fact that the proposed temporary injunction covers two counties where they claim they had no responsibilities.  *See* Resp. Br. at 49.  On remand, the trial will have the opportunity to conduct fact-finding to ensure that the reformation is reasonable.  *See, e.g.*, *Poole*, 2008 WL 4735602, at *9 (holding that a temporary injunction was overly broad and remanding to the trial court to determine reasonable reformations); *Wright*, 137 S.W.3d at 298-99 (suggesting that reformation at the temporary injunction stage was appropriate, but remanding for additional fact-finding).  These types of fact-based disputes cannot serve as a basis for refusing to reform the Agreements at this stage of the proceedings.

because the Agreements were not reformed. Such an outcome does not accomplish substantial justice and constitutes error and an abuse of discretion.

## CONCLUSION AND PRAYER

For these reasons, this Court should reverse the trial court's Order Denying Temporary Injunction and remand the action with instructions that the trial court (1) grant Morrison's requested temporary injunction, and (2) reform the Agreements at this stage of the proceedings. Morrison also prays for all such further relief to which it is justly entitled.

Respectfully submitted,

*/s/ Vanessa Griffith*

| | |
|---|---|
| Michael E. Starr | Vanessa Griffith |
| State Bar No. 19078400 | State Bar No. 00790469 |
| COGHLAN CROWSON LLP | Thomas S. Leatherbury |
| 1127 Judson Road | State Bar No. 12095275 |
| Suite 211 | Stephen S. Gilstrap |
| Longview, Texas 75606 | State Bar No. 24078563 |
| 903.758.5543 | VINSON & ELKINS LLP |
| mstarr@ccfww.com | 2001 Ross Avenue |
| | Suite 3700 |
| | Dallas, Texas 75201-2975 |
| | 214.220.7713 |
| | 214.999.7713 (facsimile) |
| | vgriffith@velaw.com |
| | tleatherbury@velaw.com |
| | sgilstrap@velaw.com |

*Attorneys for Appellants Morrison Supply Company, LLC
and Patriot Supply Holdings, Inc.*

26

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this Appellants' Reply Brief complies with the applicable word count limitations in the Texas Rules of Appellate Procedure. This Reply Brief contains 6,525 words, excluding the parts exempted by Tex. R. App. P. 9.4(i)(1). In making this certification, the undersigned has relied on the word-count function in Microsoft Word, which was used to prepare this Reply Brief.

*/s/ Vanessa Griffith*
Vanessa Griffith


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Appellants' Reply Brief has been served upon the following counsel of record via electronic filing on August 13, 2015:

Keith Dollahite
State Bar No. 05958550
M. Keith Dollahite, P.C.
5457 Donnybrook Avenue
Tyler, Texas 75703
903.581.2110
keith@mkdlaw.us

Trey Yarbrough
State Bar No. 22133500
Dallas W. Tharpe
State Bar No. 24052036
YARBROUGH WILCOX, PLLC
100 East Ferguson, Suite 1015
Tyler, Texas 75702
903.595.3111
trey@yw-lawfirm.com
dallas@yw-lawfirm.com

*/s/ Vanessa Griffith*
Vanessa Griffith