Harley H. WILLIAMS et al., Appellants,

v.

POWELL ELECTRICAL MANUFACTUR-ING COMPANY, INC., et al., Appellees.

No. 974.

Court of Civil Appeals of Texas, Houston (14th Dist.).

April 10, 1974.

Max H. Jennings, Clawson & Jennings, Houston, for appellants.

William M. Schultz, Schultz & de Ybarrondo, Houston, for appellee.

COULSON, Justice.

This is an appeal from a temporary injunction.

Powell Electrical Manufacturing Company, Inc., (Powell) and Powell-Magnetic Industries, Inc., (Powell-Magnetic), appellees, obtained a temporary injunction against appellants Harley H. Williams and Charles Bundick pending a trial on the merits of a permanent injunction. The temporary injunction restrains appellants from engaging in any business similar to and competitive with that of appellees for a period of five years in the continental United States.

The first question here is whether a subsidiary corporation can enforce, without an assignment, part of a covenant not to compete which was obtained by its parent corporation ancillary to the purchase of a business. The second question is whether a temporary injunction restraining competition in the continental United States is too broad.

Appellants originally owned and operated Magnetic Industries, Inc., (Magnetic) which manufactured, sold, and installed the "C–2 System." This system is for the remote control of valves, pumps, and motors by circuits of simple electrical relays (no patents are involved). Magnetic sold the system primarily to the petrochemical industry. On February 23, 1968, Powell incorporated Powell-Magnetic. Five days later, Powell entered into an agreement with appellants to purchase Magnetic for $180,000, and Powell-Magnetic was not a party to the contract. Powell had not been in the C–2 system business previously. The day after the contract of sale was executed, appellants signed employment contracts with Powell (again without Powell-Magnetic) to work for it for five years at salary. The employment contracts contained a covenant not to compete in the same or similar business in the United States for five years after termination of employment. Appellants worked for Powell for five years, until December 3, 1973. During this employment, Powell dissolved Magnetic and transferred its operations for the manufacture of the C–2 system to Powell-Magnetic. Powell itself sold the systems which Powell-Magnetic produced. More than two months before appellants ended their employment with Powell, they obtained a new corporate charter for "Magnetic Industries, Inc.," rented a shop, purchased components of the C–2 system, and prepared to compete with Powell.

At the hearing on the temporary injunction, appellees called appellant Williams as an adverse witness, and he testified that he had sold the C–2 system for Powell "all over the country" during his employment there. Williams asserted that most of his personal sales were in the Houston area to large oil companies. He acknowledged that at least three of Powell's manufacturer's representatives (from Illinois, Louisiana, and New Jersey) had already called him to discuss dealing with him rather than Powell. Williams identified a C–2 system customer list which he had helped to prepare. This exhibit listed refineries, pipeline companies, chemical companies,

utilities, and others throughout the United States as customers (as well as companies in many oil-producing foreign countries). All parties stipulated that Powell could have provided testimony that appellants' employment contracts were an integral entire transaction whereby Powell purchased Magnetic in 1968.

■ The standard for review of a temporary injunction is commonly stated to be whether a plaintiff has established a probable right and a probable harm. In Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549 (1953), then Justice Calvert outlined the test for abuse of discretion when a temporary injunction has been granted; the injunction must be affirmed if a cause of action has been alleged in the petition and the evidence at the hearing "tends to sustain it."

Appellants' first argument is that Powell has no right under the restrictive covenant to an injunction prohibiting appellants from manufacturing the C–2 system. The covenant prohibits appellants from engaging in any business similar to and competitive with that of Powell, but Powell has never manufactured the system. Powell has sold the system which Powell-Magnetic has manufactured.

■ While there is no Texas authority directly in point on this question, there is ample precedent from which to reason. Texas courts have long upheld contracts in reasonable restraint of trade when they are made ancillary to another contract. Justin Belt Company, Inc. v. Yost, 502 S.W.2d 681 (Tex.Sup.1973). A covenant not to compete, ancillary to the sale of a business, is upheld as a necessity to secure the goodwill which the buyer purchases. If the buyer of the business resells the business, then the second buyer can enforce the covenant not to compete when he has obtained an express assignment of the covenant. Williams v. Loicano, 390 S.W.2d 56 (Tex. Civ.App.–Fort Worth 1965, writ ref'd n.r. e.). A covenant not to compete, ancillary to an employment contract, may be as-signed if the contract rights of the employer are assignable by the terms of the contract. Texas Shop Towel v. Haire, 246 S. W.2d 482 (Tex.Civ.App.–San Antonio 1952, no writ). In Thames v. Rotary Engineering Company, 315 S.W.2d 589 (Tex. Civ.App.–El Paso 1958, writ ref'd n. r. e.), covenants not to compete were contained in an employment contract with a partnership as employer. Through the years, as partners withdrew or died, new partnership agreements were drawn, until finally a trustee conveyed the assets to a corporation which consisted of the remaining partners. The court held that the covenants were, "in effect," transferred and assigned to each succeeding partnership and that the corporation could enforce the covenants because of the transfer of assets. The court felt that a "personnel change" on the part of the employer should not deprive it of the bargain it had reached concerning competition.

■ In the instant case, the employment contracts were assignable by their own terms, but no express assignment of the covenants was made by Powell to Powell-Magnetic. However, Powell-Magnetic is a wholly-owned subsidiary of Powell. To require an assignment to a subsidiary would be to compel a formalistic, empty act. We hold that a subsidiary corporation may enforce part of a covenant not to compete, ancillary to the sale of a business purchased by its parent corporation, without an express assignment of the covenant.

Appellants' second argument is that the trial judge abused his discretion in entering a nationwide injunction. Harris County is asserted by appellants to be a reasonable area under the facts in evidence.

■ Under the rule of Weatherford Oil Tool Company v. Campbell, 161 Tex. 310, 340 S.W.2d 950 (1960), a court of equity has the duty to trim back an unreasonably large area in a covenant not to compete to an area which is reasonable, rather than to declare the covenant void. When a business is sold, a reasonable area is that

which is no larger than necessary to protect the business sold. Barrett v. Curtis, 407 S.W.2d 359 (Tex.Civ.App.–Dallas 1966, no writ). An injunction encompassing the entire state has been upheld as reasonable. Caraway v. Flagg, 277 S.W.2d 803 (Tex. Civ.App.–Dallas 1955, writ ref'd n. r. e.). However, there is no Texas authority for the proposition that a nationwide covenant not to compete is reasonable. In the Justin Belt case, *supra* 502 S.W.2d at 685, the Supreme Court affirmed a permanent injunction restraining competition for seven years in all of the continental United States west of the Mississippi River, but specifically stated that the petitioners made no attack upon the time and area limitations imposed by the trial judge.

Appellants urge that Texas courts originally declared void any covenant not to compete which did not contain an area limitation and, therefore, a covenant encompassing the entire nation must necessarily be unreasonable, because it is effectually just as broad and indefinite as no area limitation. We would agree if appellees had not demonstrated that the business sold was national in character. National injunctions enforcing a covenant not to compete ancillary to the sale of a national business have been upheld in other jurisdictions. *E. g.,* Alabama Binder & Chem. v. Pennsylvania Indus. Chem., 410 Pa. 214, 189 A.2d 180 (1963); General Bronze Corporation v. Schmeling, 208 Wis. 565, 243 N.W. 469 (1932); Voices v. Metal Tone Mfg. Co., 119 N.J.Eq. 324, 182 A. 880 (1936) aff'd, 120 N.J.Eq. 618, 187 A. 370, cert. denied, 300 U.S. 656, 57 S.Ct. 433, 81 L.Ed. 866. A national injunction pursuant to an employment contract has also been affirmed. Harwell Enterprises, Inc. v. Heim, 276 N.C. 475, 173 S.E.2d 316 (1970). We hold that the court below did not abuse its discretion in granting a national temporary injunction; a national injunction is reasonable, since it is necessary to protect the national business sold from competition. In an era of national and international corporations, a modern court of equity cannot feel constrained by past precedents involving the sale of barber shops and livery stables.

 This Court would be far less inclined to affirm a national restrictive covenant ancillary to an employment contract rather than to the sale of a business; Powell and appellants enjoyed a relative equality of bargaining position upon the sale of Magnetic, whereas an employee often must accept his employment contract *in toto* as a condition of his employment. It should also be noted that the instant case is not a situation in which a corporation has purchased another corporation in the same business in an effort to reduce competition. Powell is attempting to protect the company and the goodwill which Powell purchased, and thereby incidentally forestall additional competition in a field new to Powell.

Affirmed.