

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-09-426-CV**

WILLIAM COBB                                                                      APPELLANT

V.

CAYE PUBLISHING GROUP, INC.                                          APPELLEE

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### INTRODUCTION

In this accelerated interlocutory appeal, Appellant William Cobb challenges the trial court's temporary injunction order enforcing a covenant not to compete in an employment agreement between Cobb and Appellee Caye Publishing Group, Inc. Because we conclude that the geographical area of the trial court's injunction order is unnecessarily broad, we modify the injunction in terms of geographical scope and affirm the injunction as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

Caye Publishing publishes and distributes a "coupon based" magazine in Johnson County called *Local Life.* On May 1, 2008, Caye Publishing hired Cobb to sell advertising for *Local Life* as an independent contractor. The parties signed a "Contractor Agreement" containing a noncompete clause in which Cobb promised that, upon termination of his contractual engagement with Caye Publishing, he would not work for a competing third party or start a publication outside of Caye Publishing for a term of one year.

Cobb sold advertising space in *Local Life* until September 23, 2009, when he resigned. In early November 2009, he published and distributed a magazine titled *Who What Where* in the cities of Aledo and Weatherford, which are located in nearby Parker County. Caye Publishing then sued Cobb for breach of contract, misappropriation of trade secrets, and tortious interference with contract. On November 24, 2009, the trial court signed a temporary injunction order preventing Cobb from starting a new publication or publishing his existing magazine in Johnson County and in the cities of Aledo and Weatherford in Parker County. Cobb now appeals.

## LAW AND APPLICATION TO FACTS

### A.    Standard of Review

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits.[1] A temporary injunction is an

---

[1] *See Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993).

2

extraordinary remedy and does not issue as a matter of right.[2] To be entitled to a temporary injunction, the applicant must plead a cause of action and further show both a probable right to recover on that cause of action and a probable, imminent, and irreparable injury in the interim.[3]

Whether to grant or deny a request for a temporary injunction is within the trial court's discretion, and we will not reverse its decision absent an abuse of discretion.[4] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[5] A trial court abuses its discretion if it misapplies the law to established facts.[6]

In an appeal from an order granting or denying a temporary injunction, the scope of review is restricted to the validity of the order granting or denying relief.[7] The legal issues involved in a temporary injunction hearing are whether the applicant showed a probability of success and irreparable injury; the ultimate merits of the

---

[2]... *Id.*

[3]... *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

[4]... *Id.*

[5]... *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

[6]... *State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975); *In re Talco-Bogata Consol. Indep. Sch. Dist. Bond Election*, 994 S.W.2d 343, 347 (Tex. App.—Texarkana 1999, no pet.).

[7]... *Walling*, 863 S.W.2d at 58.

3

controversy are not before the trial court.[8] Thus, we address the enforceability of the covenant not to compete only to the extent that it affects the analysis of whether the elements required for issuance of a temporary injunction have been satisfied.[9] Our review of the trial court's order is limited to determining whether the trial court abused its discretion by granting temporary relief.[10]

## B. Probable Right to Recover

### 1. *Evaluating the geographical limitation of a covenant not to compete*

Caye Publishing pleaded a breach of contract cause of action in which it alleged that Cobb had breached the Contractor Agreement by, among other things, starting a publication outside of Caye Publishing in a geographical area targeted by Caye Publishing for expansion. Generally, every contract in restraint of trade or commerce is unlawful.[11] A covenant not to compete, however, is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.[12] A restraint is unreasonable if it is broader than necessary to protect the

---

[8] *Id.*; *see also Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 882 (Tex. App.—Dallas 2003, no pet.).

[9] *See Tom James*, 109 S.W.3d at 882.

[10] *Id.* at 885.

[11] Tex. Bus. & Com. Code Ann. § 15.05(a) (Vernon 2002).

[12] *Id.* § 15.50(a) (Vernon 2002 & Supp. 2009).

4

legitimate interests of the employer.[13] Whether a covenant imposes a reasonable restraint on trade is a question of law for the court.[14]

In his first issue, Cobb challenges the reasonableness of the geographical limitation in the trial court's injunction, asserting that the trial court abused its discretion by enforcing an overbroad covenant not to compete and by prohibiting him from publishing in Aledo and Weatherford. The noncompete covenant in the Contractor Agreement contains no geographical limitation at all; it simply states that Cobb "will not work for a competing third party for the term of one year" and that he "will not start a publication outside of [Caye Publishing] for a term of one year," without inclusion of or reference to any geographical area. A covenant not to compete with a broad geographical scope is unenforceable, particularly when no evidence establishes that the employee actually worked in all areas covered by the covenant.[15] Accordingly, we agree that the noncompete covenant in this case, which prohibits Cobb from working for a competitor or publishing any other magazine without any limitation as to geographical area, is overbroad and unenforceable.[16]

---

[13] *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 682 (Tex. 1990), *cert. denied*, 498 U.S. 1048 (1991).

[14] *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 644 (Tex. 1994); *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 388 (Tex. 1991).

[15] *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 793–94 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

[16] *See Goodin v. Jolliff*, 257 S.W.3d 341, 352 (Tex. App.—Fort Worth 2008, no pet.) (holding that an agreement restricting a party from starting, directly or indirectly, a competing business "without any limitation as to geographic scope whatsoever" was unenforceable).

5

2.    *Reforming the geographical limitation of a covenant not to compete*

If the trial court in a suit to enforce a covenant not to compete determines that the limitations as to time, geographical area, or scope of activity in the covenant are unreasonable, the court shall reform the covenant to the extent necessary to cause the limitations to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the promisee and enforce the covenant as reformed.[17] In its temporary injunction order, the trial court found that Caye Publishing had demonstrated a probable right of recovery against Cobb and granted injunctive relief, but it restricted the geographical area of the covenant to Johnson County and the cities of Aledo and Weatherford in Parker County. To grant this injunctive relief, the trial court judge was required to conclude that Caye Publishing had shown that it would probably succeed on the merits of its claim of breach of the covenant not to compete as reformed to this geographical area.[18] It is this conclusion that we review for an abuse of discretion.[19]

Generally, a reasonable area for purposes of a covenant not to compete is considered to be the territory in which the employee worked while in the employment of his employer.[20] Although Cobb worked only in Johnson County during his employment with Caye Publishing, Caye Publishing asserts that including Aledo and

---

[17] Tex. Bus. & Com. Code Ann. § 15.51(c) (Vernon 2002).

[18] *See id.*; *Butnaru*, 84 S.W.3d at 204 (requiring applicant to show a probable right to recover).

[19] *See Butnaru*, 84 S.W.3d at 211; *Tom James*, 109 S.W.3d at 882–83.

[20] *Butler*, 51 S.W.3d at 793.

6

Weatherford in the geographical scope of the covenant not to compete is reasonable because Caye Publishing had already targeted Parker County for expansion by the time that Cobb resigned. Thus, the issue in this case is whether a reasonable geographical limitation of the parties' covenant not to compete includes areas where Cobb never worked for Caye Publishing, and where Caye Publishing never actually distributed any publications, but where Caye Publishing intended to distribute publications at some point in the future.

Caye Publishing also contends that extending the covenant's geographical limitation to Aledo and Weatherford is reasonable because the evidence showed that Caye Publishing had made "more than a cursory inquiry" into publishing in Parker County. Stephen Lee Ellis, publisher of Caye Publishing, testified at the temporary injunction hearing that at the same time he had started publishing *Local Life* in Johnson County, approximately two years earlier, he had also started researching the feasibility of starting a publication in Parker County. He testified that he already had finished his research and had decided to begin publishing in Parker County before Cobb left Caye Publishing. In February or March 2009, Ellis approached the publisher of *Parker County Today*, a publication already being distributed in Parker County, about buying that publication. The publisher declined, but three months later, he contacted Ellis about a sale. This time, Ellis declined because he had just started a children's publication and his "plate was full." Ellis later contacted the *Parker County Today* publisher again about a sale, but the "deal fell through." Ellis testified that his "discussions" with the publisher were ongoing and that he had met

7

with the publisher and the publisher's business partner the previous week "[t]rying to come to some agreement."

Ellis also testified that he had told Cobb while Cobb was still working for Caye Publishing that Ellis was researching expansion opportunities in Weatherford and Aledo. Ellis told Cobb that he intended to let Cobb "run" the Parker County publication once it got started. According to Ellis, Cobb was aware that the startup of the Parker County publication was dependent on "getting the revenues [that Caye Publishing] needed to a certain point in Johnson County" and that Caye Publishing would not expand into Parker County unless it "got Johnson County up to a certain level." Furthermore, Ellis testified that Caye Publishing had looked into starting publications in other cities such as Cleburne, Mansfield, Flower Mound, and Highland Village but that it had not actually expanded its operation to those areas.

The parties have not cited, and we have not found, a case in which a geographical limitation including areas where an employer does not currently operate but has targeted for future potential expansion, standing alone, is reasonable. Texas law does, however, mandate that a geographical limitation cannot impose a greater restraint than is necessary to protect the goodwill or other business interest of the employer.[21] The trial court stated in its temporary injunction

---

[21] *See* Tex. Bus. & Com. Code Ann. § 15.50(a); *see also, e.g.*, *Evan's World Travel, Inc. v. Adams*, 978 S.W.2d 225, 233–34 (Tex. App.—Texarkana 1998, no pet.) (holding that a noncompete agreement was enforceable only in the one county in which an employee had worked for her former employer because she had not had clients from any other locations); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 660–61 (Tex. App.—Dallas 1992, no writ) (holding that a noncompete covenant that prohibited an employee from working anywhere, regardless of whether he had

8

order that without an injunction, Cobb would damage Caye Publishing's interests by displacing its exclusive right to use its research and be the first to enter markets "targeted by" Caye Publishing, thus usurping Caye Publishing's opportunity to fill the limited market void, and by capturing customer goodwill that would otherwise be winnable by Caye Publishing as the first and sole entrant into the targeted markets.

None of these reasons, however, displays any connection to Cobb's activities when he was an employee of Caye Publishing or to the geographical area in which Cobb actually worked when he was an employee of Caye Publishing.[22] During Cobb's employment with Caye Publishing, he sold advertising for a publication distributed in Johnson County only; he never sold advertising for any publication distributed in Aledo or Weatherford, and Caye Publishing never distributed any publications in Aledo or Weatherford. Ellis even testified that Cobb did not participate in conducting any of the company's research into the Parker County market, and Cobb was not part of the discussions with the publisher of *Parker County Today*.

Furthermore, the evidence at the temporary injunction hearing established that

---

serviced the area during his employment, was unenforceable); *Gomez v. Zamora*, 814 S.W.2d 114, 118 (Tex. App.—Corpus Christi 1991, no writ) (holding that a covenant defining "future marketing area" as nearly every major city in Texas was unenforceable because no evidence established that the employee actually had worked in all areas covered by the covenant); *Webb v. Hartman Newspapers, Inc.*, 793 S.W.2d 302, 303 (Tex. App.—Houston [14th Dist.] 1990, no writ) (restricting geographical area of a noncompete covenant between a newspaper publisher and its former employee to the distribution area of the newspaper for which the employee had worked).

[22] *... See Butler*, 51 S.W.3d at 793–94.

9

Caye Publishing had nothing more than a *potential* business interest in Parker County. There was no testimony that Caye Publishing had sold any advertising, cultivated any customer goodwill, or taken any action to start a publication in Aledo or Weatherford other than researching the area and having back-and-forth "discussions" with an existing publication in Parker County. Caye Publishing complains on appeal of Cobb's contacting some of its Johnson County advertisers to buy ad space in Cobb's new Parker County publication as well. But Ellis admitted at the temporary injunction hearing that Cobb was not competing with Caye Publishing for advertisers because Cobb did not have a Johnson County publication, and Caye Publishing was not in the Parker County market at that time.

Caye Publishing contends that it was Cobb's fault that Caye Publishing could not enter the Parker County market because Cobb did not sell enough ads and generate enough revenue for its Johnson County publication. Additionally, the trial court judge stated on the record that he found Cobb's actions unconscionable because Cobb had begun preparations to launch his own publication while he was still employed by Caye Publishing. But the focus of the legal analysis in this case is on Caye Publishing—the geographical location and reach of its business interests, the extent of Cobb's involvement in those business interests while he was working for Caye Publishing, and the amount of restraint reasonably necessary to protect Caye Publishing's business interests. Any preresignation planning or drop in ad sales on Cobb's part is not relevant to the evaluation of the geographical extent of injunctive relief needed to safeguard Caye Publishing's legitimate business interests.

We hold that, under the facts of this case, the trial court abused its discretion by determining for purposes of the temporary injunction that Caye Publishing had a probable right to recover for breach of a covenant not to compete in a geographical area that included Aledo and Weatherford. We sustain Cobb's first issue.

Cobb argues in his second issue that the trial court abused its discretion by enjoining him from publishing in Aledo and Weatherford because Caye Publishing showed no evidence of irreparable injury and had unclean hands. Because Cobb does not challenge the inclusion of Johnson County in the geographical scope of the temporary injunction order, and because we have already held that the trial court abused its discretion by entering a temporary injunction order that enjoined Cobb from starting a publication in Aledo and Weatherford, we do not reach Cobb's remaining issue.[23]

## CONCLUSION

Having sustained Cobb's first issue, we dissolve those portions of the trial court's temporary injunction order restraining Cobb from (1) starting, launching, operating, or participating in the start or launch of any publication outside of Caye Publishing and within the cities of Aledo and Weatherford and (2) publishing or selling any magazine or other publication that Cobb may currently be publishing or selling outside of Caye Publishing and within the cities of Aledo and Weatherford. We modify the geographical area of the trial court's temporary injunction order to

---

[23] *See* Tex. R. App. P. 47.1.

11

Johnson County only, and we affirm the trial court's order as modified.[24]

LEE ANN DAUPHINOT<br>
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED:  August 19, 2010

---

[24] *See* Tex. R. App. P. 43.2(b).