Opinion filed October 31, 2018



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00317-CV

_____

## GTG AUTOMATION, INC., Appellant/Cross-Appellee

## V.

## KENNITH WAYNE HARRIS, Appellee/Cross-Appellant

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CV-50420**

### M E M O R A N D U M   O P I N I O N

This appeal arises from a bench trial. GTG Automation, Inc. contracted with Kennith Wayne Harris to purchase Harris's business, Harris Plumbing, Heating & Air. The parties executed a purchase agreement on September 30, 2013, to accomplish the transfer. Harris also executed an employment agreement on the same date, agreeing to be employed by GTG. The purchase agreement contained a covenant not to compete, precluding Harris and his family members from engaging

in any business that would compete with GTG for a period of five years within a radius of 250 miles of Andrews.

Harris began working as a master plumber for GTG. Within months, Harris had disagreements with GTG's owner, Greg Griffin. Harris ultimately resigned and started a new plumbing business. GTG filed the underlying action to enforce the purchase and employment agreements, including seeking to enforce the covenant not to compete. GTG also asserted claims for breach of contract and unjust enrichment. Harris filed a counterclaim for alleged breaches of the two agreements by GTG.

The trial court reformed the covenant not to compete by reducing the territorial limit from 250 miles to 50 miles. The trial court also entered an injunction against Harris under the reformed terms of the covenant not to compete. The trial court awarded GTG a judgment for $35,000 on its claim that Harris violated the covenant not to compete. However, the trial court did not award GTG a recovery on GTG's claim that Harris breached the purchase agreement. The trial court also awarded Harris $60,000 on his counterclaim that GTG breached the purchase agreement. GTG challenges the trial court's judgment in three issues on appeal. Harris challenges the trial court's judgment in one cross-issue on appeal. We affirm in part and reverse and render in part.

*Background Facts*

Prior to the events leading to the underlying litigation, Harris had performed plumbing and HVAC services in Seminole and the surrounding area of approximately fifty miles. GTG provided automation services for oil companies in a larger geographical area—throughout the Permian Basin region and in New Mexico. GTG's president, Griffin, sought to diversify GTG's services to help stabilize the business during periods of fluctuation in the oil industry. Griffin learned

2

about Harris Plumbing after it performed work for Griffin's family, and Griffin began negotiating with Harris to buy the plumbing business.

In the purchase agreement, GTG agreed to pay Harris the gross amount of $250,000, payable as follows: $170,000 for the assets of Harris's business, a "sign on bonus" of $20,000 for Harris's employment with GTG, and three annual retention payments totaling $60,000 under the employment agreement. The employment agreement provided that Harris would receive an annual salary of $75,000 and two weeks of paid vacation. The employment agreement also provided for a five-year term of employment for Harris.

After closing, Harris began working for GTG as a master plumber, running GTG's new plumbing and HVAC operations. Problems soon arose between Harris and his new employer. Griffin testified that he received complaints from customers in the first month of Harris's employment. According to Griffin, Harris failed to return customer phone calls, to properly order supplies, and to document billable hours. Griffin testified that Harris's plumbing license was never transferred to GTG. Additionally, Griffin said that Harris never gave him documentation for his time.

Harris disputed the reasons for the problems cited by Griffin. Harris testified that he submitted the paperwork to transfer the license, but GTG failed to obtain the required insurance and failed to submit the application to the appropriate state agency. Harris contested the complaint about his lack of billable hours by explaining that the nature of his position as a master plumber encompassed work that was not billable. According to Harris, the billable hours were supposed to be for the plumbers underneath him who actually performed most of the work. Griffin implemented regular meetings with Harris and other employees to try to resolve these problems. Griffin testified that he continued having problems getting quotes for parts and labor and that GTG was losing money.

Harris contracted the shingles in the spring of 2014 and stayed home for three weeks. He called Kimberly Howell, who worked as a dispatcher for GTG's plumbing department, to tell her that he was home with the shingles. Harris testified that he told Howell that he performed some tasks from home. However, Harris did not speak to Griffin during this time. Because GTG determined that Harris had exhausted his "paid time off," GTG reduced Harris's paycheck by an amount proportionate to the days Harris missed from work.

Harris called Griffin to complain about the paycheck, and they met the following Monday. At the meeting, Harris argued that he should have received his full paycheck because he had been working from home, and Griffin pointed out that he had not received a phone call from Harris during his absence. During this discussion, Griffin told Harris, "You work for me," and Harris retorted, "I work for the customer." When Harris refused to acknowledge that he worked for Griffin, Griffin told Harris "to turn in all of his GTG stuff, his credit cards and truck keys and telephone." Harris turned over those items and left GTG. From these facts, the trial court determined that Harris resigned.

Harris then resumed his plumbing business under the name "KW Plumbing, Heating & Air." Harris used the Harris Plumbing slogan "A Flush Beats A Full House" on his KW truck and replaced "Harris" with "KW" on old invoices. One of those invoices showed that Harris performed plumbing work for one of his old clients about thirty miles from Andrews.

*Lost Record Contention*

In its third issue, GTG argues that it is entitled to a new trial on all causes of action under Rule 34.6(f) of the Texas Rules of Appellate Procedure because a portion of the reporter's record was lost. *See* TEX. R. APP. P. 34.6(f). GTG asserts that there is no record of a conference that took place between the attorneys and the trial court and that the trial court "lost its docket sheet, its file, and its notes regarding

the case." Under Rule 34.6(f), GTG would be entitled to a new trial if (1) GTG timely requested a reporter's record; (2) without the fault of GTG, a significant exhibit or significant portion of the court reporter's notes and records had been lost or destroyed; (3) the lost portion of the reporter's record was necessary to the appeal's resolution; and (4) the lost portion could not be replaced by agreement of the parties. *Id.* In order for a record to be "lost or destroyed" within the meaning of Rule 34.6(f), the court reporter must first make a recording of the proceedings or exhibits and then lose or destroy the record. *See Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, L.L.P.*, 499 S.W.3d 169, 179 (Tex. App.— Houston [14th Dist.] 2016, pet. denied).

The trial court addressed GTG's contention of a lost record at the hearing on GTG's motion for new trial. The trial court noted that the hearing that GTG was complaining about was "an informal conference between the attorneys and [the trial court]" addressing how to "hash out" the findings of fact and conclusions of law. This statement indicates that the conference occurred after the close of evidence and that it was informal in nature. Furthermore, there is no indication that the conference was recorded by the court reporter. Accordingly, there is no evidence of a lost or destroyed record under Rule 34.6(f) requiring a new trial. Furthermore, Rule 34.6(f)(3) specifies that a new trial may be granted only if the missing portion of the record is necessary to the appeal's resolution. *Gavrel v. Rodriguez*, 225 S.W.3d 758, 761 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Issac v. State*, 989 S.W.2d 754, 757 (Tex. Crim. App. 1999)). There is no indication that GTG was unable to present its appeal in the absence of a record of the conference or that the trial court lacked any resources in order to render a judgment in this cause. We overrule GTG's third issue.

*Reformation of the Covenant Not to Compete*

In its first issue, GTG argues that the trial court erred by reforming the covenant not to compete in the purchase agreement by reducing the territorial restriction from 250 miles to 50 miles. To be enforceable, a covenant not to compete must contain limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not "impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE ANN. § 15.51(c) (West 2011). "The hallmark of enforcement is whether or not the covenant is reasonable." *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011). "If the trial court determines that any particular provision is unreasonable or overbroad, the trial court has the authority to reform the Agreement and enforce it by injunction with reasonable limitations." *Id.* at 778; *see* BUS. & COM. § 15.51(c).

"Whether a covenant's limitations are reasonable is a question of law." *Neurodiagnostic Tex, L.L.C. v. Pierce*, 506 S.W.3d 153, 166 (Tex. App.—Tyler 2016, no pet.) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 682 (Tex. 1990)). We note, however, that "Texas decisions analyzing the reasonableness of time, geography, and scope of activities restricted in covenants not to compete are fact-specific and those decisions vary depending largely on the particular facts and circumstances of each individual case." *Poole v. U.S. Money Reserve, Inc.*, No. 09-08-137CV, 2008 WL 4735602, at *8 n.4 (Tex. App.—Beaumont Oct. 30, 2008, no pet.) (mem. op.).

The trial court found that Harris Plumbing "performed plumbing and HVAC services limited to an area within approximately 50 miles of Seminole, Texas." Additionally, the trial court found that GTG's plumbing and HVAC work during Harris's tenure encompassed "an area limited to approximately 50 miles of Seminole, Texas," and that "GTG has never provided plumbing/HVAC services

6

anywhere approaching a radius of 250 miles of the City of Andrews, Texas." GTG does not contest these findings. Instead, GTG focuses on the geographical area of its other operations and the fact that the covenant not to compete was part of a purchase agreement as opposed to just an employment agreement.[1] In that regard, GTG operated in an area that covered most of west Texas and eastern New Mexico, providing electrical and automation services for oil companies.

"In determining the reasonableness of a restrictive covenant, greater latitude is allowed in those covenants relating to the sale of a business . . . than in those covenants ancillary to an employment contract." *Budget Rent-A-Car Corp. of Am. v. Fein*, 342 F.2d 509, 515 (5th Cir. 1965) (quoting *Orkin Exterminating Co. of So. Georgia v. Mills*, 127 S.E.2d 796 (Ga. 1962)); *see Williams v. Powell Elec. Mfg. Co.*, 508 S.W.2d 665, 667–68 (Tex. Civ. App.—Houston [14th Dist.] 1974, no pet.). In the context of an employment contract, generally, a reasonable area for purposes of a covenant not to compete is considered to be the territory in which the employee worked while in the employment of his employer, i.e., the territory where Harris worked on behalf of GTG. *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 793 (Tex. App.—Houston [1st Dist.] 2001, no pet.). By contrast, in cases dealing with the sale of a business, it is necessary to protect the goodwill that the buyer purchased. *Williams*, 508 S.W.2d at 667. "[A] reasonable area is that which is no larger than necessary to protect the business sold." *Id.* at 667–68. Therefore, with a purchase agreement, the nature and extent of the previously owned business is the proper focus. *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 295–96 (5th Cir. 2004). In

---

[1]The purchase agreement contained a covenant not to compete with a territorial limit of 250 miles from Andrews. The employment agreement also contained a covenant not to compete. However, the covenant in the employment agreement contained a much smaller geographical limit—Andrews, Midland, and Ector Counties.

*Vais Arms*, the Fifth Circuit upheld a nationwide restriction because the business that was sold was national in character. *Id.*

In spite of the fact that Harris Plumbing only performed work within a fifty-mile radius of Seminole and that Harris only performed plumbing work on behalf of GTG in the same general area, GTG contends that the 250-mile restriction is reasonable because of its work area in the oil field and its goals of expanding the plumbing business in the future with Harris. The Fort Worth Court of Appeals addressed a similar contention in *Cobb v. Caye Publ'g Grp., Inc.*, 322 S.W.3d 780, 784–85 (Tex. App.—Fort Worth 2010, no pet.). The court noted that it had not found any cases where areas "targeted for future potential expansion, standing alone, is reasonable" for the purposes of a covenant not to compete. *Id.* at 785.

While GTG had other business activities in the 250-mile area, unlike the employer in *Cobb*, those activities did not include plumbing or HVAC services. In the absence of evidence that Harris performed plumbing services on behalf of GTG in a geographical area greater than that of Harris Plumbing, we conclude that the geographical area in which Harris Plumbing operated—a fifty-mile radius around Seminole—was a reasonable limitation for the covenant not to compete. This area comports with the goodwill of Harris Plumbing that GTG acquired in the transaction. *See Vais Arms*, 383 F.3d at 295–96. This area also comports with the area where Harris worked while working for GTG. *See Butler*, 51 S.W.3d at 793. Accordingly, the trial court did not err in reforming the geographical restriction of the covenant not to compete in the purchase agreement to a fifty-mile radius around Seminole. We overrule GTG's first issue.

Our resolution of GTG's first issue has a bearing on Harris's cross-issue. Harris asserts that, under the express terms of Section 15.51(c) of the Texas Business and Commerce Code, the trial court's reformation of the covenant not to compete precludes an award of damages to GTG for Harris's breach of the covenant not to

compete. In this regard, the trial court awarded GTG $35,000 in damages for Harris's breach of the covenant not to compete even though the trial court reformed the geographical area of the covenant. Section 15.51(c) provides that "the court may not award the promisee damages for a breach of the covenant before its reformation." BUS & COM. § 15.51(c); *see Franlink, Inc. v. GJMS Unlimited, Inc.*, 401 S.W.3d 705, 712 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (Section 15.51(c) precludes a promisee from recovering damages for the breach of a covenant not to compete that is so overly restrictive that it requires reformation.). GTG agrees that Section 15.51(c) precludes an award of damages if we uphold the trial court's reformation of the covenant not to compete. Thus, our disposition of GTG's first issue is dispositive of Harris's cross-issue. In light of the trial court's reformation of the covenant not to compete, GTG was not entitled to the award of $35,000 for Harris's breach of the covenant prior to its reformation. We sustain Harris's cross-issue.

*Challenges to the Sufficiency of the Evidence*

GTG presents various evidentiary challenges in its second issue. First, GTG challenges the legal and factual sufficiency of the evidence supporting the award of $60,000 to Harris under the terms of the purchase agreement. GTG also challenges the trial court's findings rejecting GTG's claims for damages for breach of the purchase agreement and unjust enrichment.

*$60,000 Award to Harris Under the Purchase Agreement*

When the appellant challenges the legal sufficiency of the evidence supporting an adverse finding on which he did not have the burden of proof at trial, he must demonstrate that there is no evidence to support the adverse finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a legal sufficiency review, we consider all of the evidence in the light most favorable to the prevailing party, make every

9

reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822. "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

GTG's legal sufficiency challenge to the $60,000 awarded by the trial court to Harris essentially presents a question concerning the construction of the consideration owed by GTG under the terms of the purchase agreement and the employment agreement. The trial court determined that the $60,000 awarded to Harris was money owed to him as a part of the purchase price for Harris's business. The trial court explained at the hearing on GTG's motion for new trial that it determined that this sum was owed to Harris as a part of the purchase price irrespective of whether or not he continued working for GTG.

"A contract is not ambiguous if the contract's language can be given a certain or definite meaning." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). "Absent ambiguity, contracts are construed as a matter of law." *Id.* The primary objective of contract interpretation "is to ascertain the parties' true intentions as expressed in the language they chose." *Id.* Unless the contract indicates otherwise, we give words their plain meaning and "'construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served,' and avoiding unreasonable constructions when possible and

10

proper." *Id.* (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). "[W]e consider the entire writing, harmonizing and giving effect to all the contract provisions so that none will be rendered meaningless." *Id.* And when there are multiple writings within a single transaction, as here, we consider "all writings that pertain to the same transaction" together. *DeWitt Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999).

The purchase agreement contained a section that specifically addressed the consideration to be paid by GTG for Harris's business. This section provided as follows:

> *1.3 Consideration for Assets.* The total consideration for the purchase, sale and conveyance of the Assets to Buyer and for the other covenants and agreements of Seller contained herein is Two Hundred Fifty Thousand Dollars ($250,000.00), subject to any adjustment provided for herein this Agreement, and is payable as follows: (i) Buyer agrees to pay to Seller, on the Closing Date, the amount of One Hundred Seventy Thousand Dollars ($170,000.00) for the Assets (as adjusted herein) and Twenty Thousand Dollars ($20,000.00) as a sign on bonus, totaling One Hundred Ninety Thousand Dollars ($190,000.00) (the *"Closing Payment"*), plus (ii) enter into an employment agreement with Seller (the *"Employment Agreement"*) (attached hereto as Exhibit A) that provides for three (3) annual retention payments totaling Sixty Thousand Dollars ($60,000.00), in the event Seller remains employed with Buyer or its affiliates and complies with all of the obligations and duties of Seller in this Agreement and the Employment Agreement in order to earn such retention payments) (clauses (i) and (ii) as adjusted in accordance with the terms of this Agreement and the Employment Agreement, collectively the *"Purchase Price"*).

The corresponding provision of the employment agreement provided as follows:

> 2.01.03 **Retention Pay Bonus(es).** Pursuant to the terms of the Purchase Agreement, Employee shall be entitled to an annual lump sum retention pay bonus of Twenty Thousand and No/100 Dollars ($20,000.00), payable during the Term hereof, on the dates set forth below, unless this Agreement is terminated pursuant to the terms of Section 2.02.02, below.
>
> > (a) $20,000.00 on January 1, 2015
> >
> > (b) $20,000.00 on January 1, 2016
> >
> > (c) $20,000.00 on January 1, 2017

As noted previously, the trial court determined that Harris voluntarily resigned prior to January 1, 2015. GTG contends that Harris was not entitled to receive the retention-pay bonuses totaling $60,000 because he was not employed by GTG on January 1, 2015, January 1, 2016, and January 1, 2017. We agree.

The purchase agreement included the $60,000 for the retention payments as a part of the total consideration of $250,000 owed by GTG to Harris. However, the purchase agreement specified that the $250,000 was not just for the sale of Harris's business but, rather, that it was also consideration "for the other covenants and agreements of Seller contained herein." The purchase agreement referred to the payments as "retention payments," and it specified that the payments were subject to the employment agreement "in the event [Harris] remains employed" with GTG. The employment agreement referred to the payments as "retention pay bonus(es)" and specified that they were payable on the dates set out in the agreement unless the agreement was terminated under Section 2.02.02.

Harris asserts on appeal that he was entitled to the retention payments even though he resigned because the agreement was not terminated under the terms of Section 2.02.02. However, subsection (h) provided as follows:

> (h) **Termination on Notice.** Either the Employee or the Company may terminate this Agreement, except for the *Non-Disclosure*, *Non-*

12

*Compete*, and ***Non-Interference*** provisions hereof, for any reason, or for no reason, by providing the other party with sixty (60) days written notice of such termination.

Thus, Section 2.02.02 permitted the unilateral termination of the employment agreement by Harris for any reason or for no reason.

Under the terms of the purchase agreement and the employment agreement, Harris's entitlement to the retention payments were conditioned upon his continued employment with GTG on the respective dates for the retention payments. Accordingly, Harris was not entitled to these payments as a matter of law after he voluntarily resigned from GTG. Therefore, there is no evidence to support the $60,000 awarded to Harris. We sustain GTG's legal sufficiency challenge to the trial court's $60,000 award in favor of Harris. In light of our determination, we do not reach GTG's factual sufficiency challenge to the $60,000 award.

*GTG's Claim for Lost Profits*

GTG also contends that legally insufficient evidence supports the trial court's rejection of GTG's claim for lost profits. To successfully challenge the legal sufficiency of an adverse finding on an issue on which the appellant had the burden of proof, the appellant must conclusively establish all vital facts in support of that issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). Evidence is conclusive only if reasonable people could not differ in their conclusions, which depends on the facts of each case. *City of Keller*, 168 S.W.3d at 816. Appellant also appears to be challenging the factual sufficiency of the evidence on its claim for lost profits. In a factual-sufficiency challenge, we consider and weigh all of the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to

13

be clearly wrong and unjust. *Id.* at 407. We may not substitute our own judgment for that of the factfinder or pass upon the credibility of witnesses. *Id.*

A successful claim for breach of contract requires proof of the following elements: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of that breach. *See Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769 (Tex. App.—Dallas 2005, pet. denied). The general rule is that the complaining party is entitled to recover the amount necessary to put him in as good a position as if the contract had been performed. *Smith v. Kinslow*, 598 S.W.2d 910, 912 (Tex. Civ. App.—Dallas 1980, no writ). The normal measure of damages is just compensation for the loss or damage actually sustained, commonly referred to as the benefit of the bargain. *See SAVA Gumarska in Kemijska Industria D.D. v. Advanced Polymer Sciences, Inc.*, 128 S.W.3d 304, 317 n.6 (Tex. App.—Dallas 2004, no pet.). The benefit-of-the-bargain measure of damages may include reasonably certain lost profits. *See Cmty. Dev. Serv., Inc. v. Replacement Parts Mfg., Inc.*, 679 S.W.2d 721, 725 (Tex. App.—Houston [1st Dist.] 1984, no writ).

GTG focuses its sufficiency arguments on the strength of the proof of its damages for lost profits. Specifically, GTG cites Harris's representations that Harris Plumbing made approximately $124,000 per year but failed to achieve similar profits for GTG. In response, Harris asserts that the $124,000 figure created, at most, a fact issue that the trial court was free to reject.

GTG does not specifically challenge the adverse liability findings by the trial court as to Harris's breach of the agreements other than to generally assert that the trial court "rendered inconsistent findings on whether GTG could recover on the basis of lost profits." Furthermore, GTG does not challenge the adverse findings that Harris's conduct did not cause it to suffer lost profits. Lost profits are allowed only if there is causation—"where it is shown that a loss of profits is the natural and

14

probable consequence of the act or omission complained of." *Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 860 (Tex. 2017) (quoting *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994)). A party appealing from a nonjury trial in which the trial court made findings of fact and conclusions of law should direct his attack on the sufficiency of the evidence at specific findings of facts, rather than at the judgment as a whole. *See Nw. Park Homeowners Ass'n, Inc. v. Brundrett*, 970 S.W.2d 700, 704 (Tex. App.— Amarillo 1998, pet. denied). Irrespective of these deficiencies, the evidence did not conclusively establish GTG's entitlement to recover lost profits.

The rules concerning the sufficiency of evidence of lost-profits damages are well established:

> Recovery for lost profits does not require that the loss be susceptible of exact calculation. However, the injured party must do more than show that [it] suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. What constitutes reasonably certain evidence of lost profits is a fact intensive determination. As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates.

*ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010) (quoting *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)). Lost-profits damages can be recovered only when both the fact and amount of damages is proved with reasonable certainty. *Horizon Health Corp.*, 520 S.W.3d at 860. "When the evidence supporting a claim for lost profits damages is largely speculative or a mere hope for success, lost profits have not been established with reasonable certainty." *Id.* (citing *Tex. Instruments*, 877 S.W.2d at 279). "The law is wisely skeptical of claims of lost profits from untested ventures or in unpredictable circumstances,

which in reality are little more than wishful thinking." *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 280 (Tex. 2015).

The evidence did not conclusively establish that GTG incurred lost profits in the amount of $124,000 a year for five years based on "a piece of paper" that Harris gave Griffin. GTG's entry into the plumbing business was a new, untested venture. GTG's calculation of lost profits was more akin to a "mere hope for success" rather than a matter based upon reasonable certainty. Furthermore, GTG's expectation of profits were based upon Harris's continued employment with GTG for the entire five-year period. However, we have previously noted that Harris was permitted to terminate the contract for any reason with sixty days' notice. Therefore, GTG failed to conclusively establish its claim for lost profits. For the same reasons, the trial court's denial of a recovery of lost profits to GTG was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Accordingly, we overrule GTG's challenges to the sufficiency of the evidence supporting the trial court's denial of its claim for lost profits.

*Unjust Enrichment*

Finally, GTG contends that it established as a matter of law its claim for unjust enrichment. GTG contends that it should be refunded the entire $190,000 that it paid to Harris for his plumbing business because Harris did not deliver all of the items that he promised to deliver in the purchase agreement. Specifically, GTG complains that Harris failed to transfer clear title to vehicles and failed to transfer his plumbing license under the purchase agreement.

Unjust enrichment is an implied-contract theory providing that one should make restitution when it would be unjust to retain benefits received. *Protocol Techs., Inc. v. J.B. Grand Canyon Dairy, L.P.*, 406 S.W.3d 609, 614 (Tex. App.—Eastland 2013, no pet.) (citing *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.)). Unjust enrichment allows recovery "when one

person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Id.* (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). However, a party generally may not recover under a claim for unjust enrichment if there is an express contract that covers the services or materials furnished. *Id.* (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000)).

The trial court determined that the purchase agreement and employment agreement were valid and enforceable contracts. These contracts expressly covered the matters for which GTG sought a recovery for unjust enrichment. Accordingly, the contracts precluded GTG's claim for unjust enrichment because GTG could pursue a claim for breach of contract based upon the terms of the contracts.[2] We overrule GTG's challenge with respect to its unjust-enrichment claim.

We sustain GTG's second issue in part, and we overrule it in part. We sustain GTG's second issue with respect to the $60,000 awarded to Harris under the purchase agreement. We overrule GTG's second issue with respect to its evidentiary challenges to the non-award of damages for lost profits and unjust enrichment.

---

[2]We additionally note that GTG's claim for unjust enrichment is similar to a claim for rescission of a contract. "Rescission is an equitable remedy that operates to extinguish a contract that is legally valid but must be set aside due to fraud, mistake, or for some other reason to avoid unjust enrichment." *Martin v. Cadle Co.*, 133 S.W.3d 897, 903 (Tex. App.—Dallas 2004, pet. denied). Rescission of a contract is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate. *Scott v. Sebree*, 986 S.W.2d 364, 368 (Tex. App.—Austin 1999, pet. denied). Whether to grant rescission lies within the trial court's discretion. *See Gentry v. Squires Constr. Inc.*, 188 S.W.3d 396, 410 (Tex. App.—Dallas 2006, no pet.).

GTG did not present a claim for rescission. Furthermore, equity generally will not allow rescission of a contract for an immaterial breach. *See In re Marriage of Smith*, 115 S.W.3d 126, 134 (Tex. App.—Texarkana 2003, pet. denied); *see also Wright v. Wright*, 280 S.W.3d 901, 907 (Tex. App.—Eastland 2009, no pet.). The trial court did not find that Harris committed a material breach of the contracts, and GTG does not assert on appeal that Harris committed a material breach.

*This Court's Ruling*

We reverse the judgment of the trial court with respect to the $35,000 awarded to GTG and render judgment that GTG take nothing from Harris. We also reverse the judgment of the trial court with respect to the $60,000 awarded to Harris and render judgment that Harris take nothing from GTG. We affirm the judgment of the trial court in all other respects.

JOHN M. BAILEY

CHIEF JUSTICE

October 31, 2018

Panel consists of: Bailey, C.J.,
Willson, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.